# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

ADAM ROBERT ROUSSELLE                                        PLAINTIFF

v.                                                          No. 3:25-cv-469-BJB

GOVERNMENT OF HONDURAS ET AL.                               DEFENDANTS

\* \* \* \* \*

### MEMORANDUM OPINION & ORDER

Adam Robert Rousselle, proceeding *pro se*, has sued the Republic of Honduras and its forestry agency, Corporación Hondureña de Desarrollo Forestal, based on allegations encompassing false imprisonment, wrongful death, tortious interference, and expropriation. Between 1993 and 1995, Rousselle alleges, he owned CBI Lumber, based in Honduras' Puerto Cortes Free Zone. Around that time, he says, the Honduran government and its Forestry Ministry[1] violated international law by committing "commercial sabotage" directly affecting U.S. commerce: his father was falsely imprisoned and his company's lumber equipment was seized. Now, 31 years later, he has sued Honduras and the Forestry Ministry for more than 80 million dollars. This is not his first such suit, however: Rousselle filed a nearly identical complaint in the U.S. District Court for South Carolina in 2025, but that court dismissed his claims without prejudice for lack of jurisdiction. *See Rousselle v. Gov't of Honduras*, No. 2:25-cv-539, 2025 WL 892551 (D.S.C. Mar. 24, 2025).

As the South Carolina court recognized, foreign states are presumptively immune from suit in the United States courts under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq*. Rousselle alleges, however, that commercial-activity and expropriation exceptions both overcome sovereign immunity and allow his suit. *See* 28 U.S.C. § 1605(a)(2) (commercial activity); § 1605(a)(3) (expropriation). And he filed a motion for jurisdictional discovery simultaneously

---

[1] "It appears that COHDEFOR is 'the Honduran Forest Ministry.'" *Rousselle v. Gov't of Honduras*, No. 2:25-cv-539, 2025 WL 1032246, at *1 n.1 (D.S.C. Feb. 26, 2025), *report and recommendation adopted*, No. 2:25-CV-00539, 2025 WL 892551 (D.S.C. Mar. 24, 2025). *See also Byrd v. Republic of Honduras*, 613 F. App'x 31, 34 (2d Cir. 2015) (referring to "a Honduran statute stating that the government assumed the liability of Corporation Hondureña de Desarrolla Forestal ('Cohdefor')").

with his complaint. Yet his discovery motion is almost entirely disconnected from his complaint's allegations. His complaint says nothing about the Defendants' commercial activity in the United States, nor does it suggest that any expropriated property can be traced to the United States. So this Court lacks jurisdiction and dismisses the complaint under Rule 12(b)(1).

### A.  Jurisdictional discovery

A plaintiff's request that a sovereign defendant produce "any" documents of financial transactions, records, and communications that *may* have a connection to the United States is overbroad on its face. *See* Discovery Motion (DN 2) at 1. Even when carefully tailored, such a request "require[s] a delicate balancing 'between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery." *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998) (citing *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992)). Several courts have held that discovery against foreign sovereigns "should be ordered circumspectly and only to *verify* allegations of specific facts crucial to an immunity determination." *Arriba Ltd.*, 962 F.2d at 534 (emphasis added).

Rousselle's request is neither circumspect nor specific. He seeks to unveil anything related to Honduras' and the Forestry Ministry's "communications" with "U.S.-based commercial entities." Discovery Motion at 1. He hasn't alleged or identified any particular communications with the United States. And his request—based on three-decade-old allegations—isn't time-limited. But even if it were, the communications would surely be legion. He also seeks access to the Defendants' "financial transactions related to lumber seized" by the Forestry Ministry that had been "ultimately routed to the United States." *Id.* If financial transactions that merely touched the United States sufficed to overcome immunity, of course, almost no sovereign would be safe. And his allegations appear to have little if anything to do with this country's financial system—given that his complaint never alleges that the Defendants transacted with any U.S. businesses. *See* Complaint at 2–3 (describing *his* companies' commercial activities, not the Defendants').

Rousselle's other requests—for "contractual documents, purchase orders, and shipping confirmations involving CBI Lumber, COHDEFOR, and U.S. consignees"— likewise remain untethered from the complaint's allegations. Discovery Motion at 1. Again, no allegation in the complaint mentions the Defendants' commercial activities in the United States. *See Arriba Ltd.*, 962 F.2d at 537 n.17 ("As the other FSIA cases demonstrate, discovery may be used *to confirm* specific facts that have been pleaded as a basis for enforcing the commercial activities exception, but it cannot supplant

2

the pleader's duty to state those facts at the outset of the case.") (emphasis added). This disconnect between his pleadings and discovery requests isn't an attempt to "verify allegations of specific facts crucial to an immunity determination." *Id.* at 534. Rather, it's a speculative attempt to "uncover those facts in the first instance." *MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 513 (S.D.N.Y. 2017) (internal citations and quotation marks omitted); *cf. A.O. Smith Corp. v. United States*, 774 F.3d 359, 369 (6th Cir. 2014) (district court did not abuse its discretion denying motion where plaintiffs could only "speculate" that discovery would yield information relevant to FTCA immunity). So the Court denies Rousselle's request for this broad and nonspecific set of information whose connection to his complaint is impossible to perceive.

### B.  The Foreign Sovereign Immunities Act

The FSIA, on which Rousselle relies, "creates a baseline presumption of immunity from suit." *Fed. Republic of Germany v. Philipp*, 592 U.S. 169, 176 (2021). And it "provides the 'sole basis' for obtaining jurisdiction over a foreign sovereign in the United States." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 611 (1992) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434–39 (1989)). A "foreign state," as defined by the FSIA, includes Honduras and any of its agencies—so both Defendants are presumptively immune from suit, absent an applicable exception. 28 U.S.C. § 1603(a) ("'foreign state' … includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state"); Complaint ¶ 1 (describing the "Government of Honduras and *its agency* Corporación Hondureña de Desarrollo Forestal (COHDEFOR)) (emphasis added). Rousselle hasn't argued otherwise—and hasn't pled any facts that, even if presumed true, would establish an exception to the immunity presumptively enjoyed by Honduras and its agency. Based on his allegations, therefore, neither the commercial-activities nor the expropriation exception applies.[2]

**1. Commercial activity.** Rousselle alleges that the Defendants acted "in a commercial capacity, not as a sovereign" when they seized his companies' lumber. Complaint at 3. The FSIA provides an exception to immunity when an action is based on a foreign state's "commercial activity carried on in the United States"

---

[2] Because this Court lacks jurisdiction, it may not grant Rousselle's request to enter default judgment against the Defendants, even assuming the requirements were otherwise met. *See, e.g., Ampro Indus., Inc. v. Dr. Farrah Gray Pub.*, LLC, No. 12-2696, 2013 WL 5426257, at *2 (W.D. Tenn. Sept. 26, 2013) ("A court must have subject matter and personal jurisdiction to enter a valid default judgment."). "[D]efault judgments," moreover, "are disfavored, especially … against foreign sovereigns." *E.g., First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda—Permanent Mission*, 877 F.2d 189, 196 (2d Cir. 1989).

28 U.S.C. § 1605(a)(2).[3] "'[C]ommercial activity' means either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). And whether the foreign sovereign's conduct is "commercial" depends on "whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" *Republic of Argentina,* 504 U.S. at 614 (citing BLACK'S LAW DICTIONARY 270 (6th ed. 1990)) (emphasis in original).

The Defendants' "activities in question are not private, but sovereign in nature," so the "commercial activity exception [does] not apply." *O'Bryan v. Holy See*, 556 F.3d 361, 379 (6th Cir. 2009). On Rousselle's telling, "Defendants engaged in commercial activity by interfering with international shipments and U.S. commercial contracts, constituting a direct impact on U.S. commerce." Complaint ¶ 23. And this alleged interference stems from the Defendants' "seizure" of his lumber business: "11 containers of lumber," "[c]ommercial trucks and processing equipment," CBI Lumber's "sawmill and facility," and "contracted inventory." ¶ 13.

But property seizure of the sort Rousselle alleges "'constitut[e] a quintessentially sovereign act" that "fall[s] outside the scope of the commercial activity exception." *de Csepel v. Republic of Hungary*, 714 F.3d 591, 600 (D.C. Cir. 2013) (quoting *Rong v. Liaoning Province Gov't*, 452 F.3d 883, 890 (D.C. Cir. 2006)). True, he also describes the conduct as the Defendants' "seizure and *attempted* sale of Plaintiff's lumber." Complaint ¶ 24 (emphasis added). Sale, unlike seizure, might be commercial. But nowhere does Rousselle allege to whom or where the Defendants purportedly sold or contracted to sell the "stolen" lumber. Such an omission falls wells short of pleading that the Defendants sold lumber (or participated in *any* "commercial activity" with "direct effect[s]") "in the United States." 28 U.S.C. § 1605(a)(2).

Nor would the alleged false imprisonment or corruption implicate commercial activity. Holding the late Joseph Louis Rousselle suggests "an abuse of power," not commercial activity. *Saudi Arabia v. Nelson*, 507 U.S. 349, 361 (1993) ("The conduct boils down to abuse of the power of its police by the Saudi Government, and however monstrous such abuse undoubtedly may be, a foreign state's exercise of the power of its police has long been understood for purposes of the restrictive theory as peculiarly sovereign in nature.").

---

[3] Or, similarly, the sovereign's "act in the United States in connection with a commercial activity of the foreign state elsewhere," or its act "elsewhere" "in connection with a commercial activity … that causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

The exhibits, on which Rousselle relies and attaches to his complaint, further suggest that the Defendants acted in a sovereign capacity.  A 30-year-old affidavit from Senior Foreign Service Officer Emily Leonard describes the Defendants' patterns of corruption and "falsified" records.  Attached Exhibit (DN 1-4) at 3, 15.  But she never says that the Defendants used bribes or records to participate in the United States' commercial markets.[4]  None of Rousselle's allegations indicate that the Defendants engaged in conduct "analogous to a private commercial transaction." *Weltover*, 504 U.S. at 608.  So the commercial-activities exception doesn't apply here.

**2. Expropriation.**  Despite the superficial similarity of Rousselle's lumber-seizure allegations and expropriation, that exception is limited to situations where, a sovereign state takes "property … in violation of international law" and the seized property or its proceeds are now either "present in the United States" or "owned … by an agency or instrumentality of the foreign state" that does business in the United States.  28 U.S.C. § 1605(a)(3).   As the Supreme Court put it, a plaintiff must not only allege that a foreign sovereign expropriated his property, but also "show a tracing of some sort that explains the property's lineage and how it found itself in the United States (or in the possession of a foreign sovereign agency that does commercial activity here)." *Republic of Hungary v. Simon*, 604 U.S. 115, 126 (2025).

Although Rousselle alleges that a Honduran agency seized his lumber, he hasn't alleged any facts connecting the expropriated lumber, or any proceeds from its sale, to the United States.  Nor has he alleged that the lumber now lies in the hands of a Honduran agency that does business in the United States.  Instead, he maintains that because the "expropriated goods were connected to active contracts and commerce with U.S. companies," the Defendants' conduct falls within the expropriation exception.  Complaint at 4.  These allegations, again, rely on *his* company's ties to the United States to support his allegations of the Defendants' commercial connections.  But nothing in his complaint suggests that thirty years after the alleged misconduct the seized lumber or property exchanged for that lumber "found itself in the United States" or in the "possession of a [Honduran] agency that

---

[4] Rousselle alleges that a "1996 Findings of Fact and Conclusions of Law issued by Judge Henry Dickinson" proves that the Forestry Ministry's "actions were illegal under Honduran law." Complaint at 3.  (He's provided no citation to this case but has attached a scanned copy to his complaint. *See* Attached Exhibit (DN 1-3)). This bankruptcy decision addressed Nordisk and CBI Lumber's dispute about undelivered lumber.  Even assuming that this decision has some bearing on the jurisdictional analysis, it weighs in favor of immunity. Judge Dickinson determined, among other things, that the Forestry Ministry "had no power or authority to seize" CBI Lumber's products. *Id.* at 4.  An unlawful abuse of power, as the findings suggest, however, is consistent with the acts of a sovereign state, not a private actor.

does commercial activity here." *Simon*, 604 U.S. at 126.  Having never alleged that the seized lumber or any other property has a "commercial nexus" to the United States, the expropriation exception doesn't confer jurisdiction.  *See id.* at 122.

## ORDER

Because Rousselle hasn't alleged a proper basis for this Court's jurisdiction, and because his request for discovery cannot cure that deficiency, the Court denies his motion for jurisdictional discovery, dismisses his complaint, and denies as moot all other pending motions.